

FILED

NOV 12 2019

Clerk, U S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JAMES WILLIAM WALKER,<br><br>Petitioner,<br><br>vs.<br><br>PAT MCTIGHE; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 18-28-BU-BMM-KLD<br><br><br>FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This case comes before the Court on state pro se Petitioner James William Walker's application for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Walker subsequently filed an Amended Petition and exhibits. See, (Docs. 8, 8-1, 8-2, 8-3.)

Following a two-day jury trial in Montana's Eighteenth Judicial District, Gallatin County, Walker was convicted of Aggravated Assault. (Doc. 8 at 2.) On July 20, 2017, Walker was sentenced to serve 20 years at the Montana State Prison. *Id.*

Although Walker indicates he filed a motion for a new trial in the state

1

district court, *id.* at 8, ¶ 11; see also, (Doc. 2-2 at 10-15), Walker acknowledges he did not appeal his conviction to the Montana Supreme Court, *id.* at 2, ¶ 8, did not seek relief from the Sentence Review Division, *id.* at 2, ¶ 9, and did not seek postconviction relief.[1] For the reasons set forth herein, Walker's Amended Petition should be dismissed with prejudice as procedurally defaulted without excuse.

## I. Background

In 2015, Walker, was a tenant at 901 Montana Street, Belgrade, Montana, in a house owned by Douglas Brown. At the beginning of November, Brown rented another room in the house to Jennifer Glawe, her partner, and the couple's dog. Immediate conflict ensued between Walker and the new tenants, resulting in multiple calls to law enforcement[2] and Glawe and Walker each seeking orders of protection against one another.

---

[1] A review of the state court docket confirms that Walker did not file a postconviction action, but that he did engage in protracted litigation between the conclusion of his jury trial on March 8, 2016, and his sentencing hearing on July 20, 2017. This Court may take judicial notice of proceedings in other courts when directly related to the case at issue. *Tigueros v. Adams,* 658 F. 3d 983, 987 (9th Cir. 2011).

[2] For example, on November 3, 2015, Walker called law enforcement at 18:59 to report a problem and requested someone moderate a meeting between the tenants and homeowner, Brown. A second call was placed by Walker that same evening, at 21:49, to report continuing issues with the other tenants. *Id.* at 3. On November 4, 2015, Walker called law enforcement advising that Glawe's dog was aggressive toward him. The responding officer talked to all three tenants and then to Brown, about potentially evicting one of the tenants in order to diffuse the situation. *Id.* at 5.

At 8:22 a.m., on the morning of November 5th, an ambulance was dispatched to the shared residence, following Glawe's call to 911. See, (Doc. 2-1 at 20.) EMT's and law enforcement officers responded. Glawe advised that as a result of a physical altercation with Walker, she had fallen down a flight of stairs and could not feel or move her legs. Because Glawe did not respond to a hypodermic needle stimulus to her feet, responders believed Glawe may have suffered a spinal cord injury. Glawe was transported to the emergency room at the Bozeman Deaconess Hospital. After several hours, Glawe regained use of her legs and was admitted to the hospital for further observation. The ER physician, Dr. Jesse Coil, opined that the loss of use of her lower extremities was a result of "conversion disorder."[3] Glawe was released from the hospital the following day.

On November 25, 2015, Walker was charged in Gallatin County District Court, with Aggravated Assault, under MCA 45-5-202, for purposely or knowingly, by use of force or contact, causing reasonable apprehension of serious bodily injury to Glawe. See generally, Information/Affidavit (Doc. 2-1 at 4-13.)

Walker was represented by Annie DeWolf, the Regional Public Defender for the Bozeman Division. On March 7-8, 2016, a jury trial was held. Walker asserted an alibi defense, contending he was not at the shared residence when the

---

[3] Coil testified that conversion disorder is "a psychological condition that manifests as physical symptoms and it is almost always triggered by a pretty extreme emotional event, or emotional distress." Tr. Trns. (Doc. 13-3 at 64: 5-8.)

3

purported altercation occurred, but instead was at the Belgrade City Court Clerk's Office, attempting to file an order of protection against Glawe. See e.g., Not. Aff. Defense (Doc. 2-1 at 2-3.) Walker did not testify in his own defense, however a Belgrade City Court Clerk, Teresa Flannagan, did testify and confirmed Walker's presence at the City Clerk's Office. See e.g., Trial Trns. (Doc. 10-2.) Flannagan believed Walker was at the Clerk's Office between 8:00 a.m. and 8:15 on the morning of November 5, 2015. The jury ultimately found Walker guilty of Aggravated Assault.

Following the trial, Walker filed a complaint with the Office of Disciplinary Counsel (ODC) against DeWolf; the filing of the complaint terminated DeWolf's representation. See e.g., (Doc. 2-2 at 1-3.)

Walker was appointed new counsel, Mariah Eastman, who filed a motion for a new trial on Walker's behalf. See, (Doc. 2-2 at 10-15.) Because at the time of the filing of the motion Eastman did not yet have the trial transcripts, she set forth the claims Walker sought to advance, including ineffective assistance of trial counsel, in summary fashion. *Id.* at 11-14. Walker contends this motion for a new trial was so compelling, that the prosecutor, Christopher Gregory, altered the trial transcript in an effort to defeat the motion. See e.g., (Doc. 2-2 at 16-18, 22-26);[4]

---

[4] Although difficult to follow, Walker contends page 253 contained one of the "alterations" made by Gregory. Walker believes Gregory's misconduct was further compounded when his third attorney, Victor Bunitsky, attached this page of

4

Walker sought investigation into Gregory's practices and the workings of the Gallatin County district court based upon the purported misconduct. *Id.*

Walker then filed an ODC complaint against Eastman. See, (Doc. 13-17); see also, (Doc. 15-1 at 46.)[5] Eastman was permitted to withdraw as Walker's counsel. See, Or. (Doc. 13-37.)

Victor Bunitsky was appointed to represent Walker. Bunitsky filed a motion for a new trial arguing that newly discovered alarm evidence from 901 Montana Street supported Walker's alibi defense and that Glawe provided incomplete testimony on cross-examination. (Doc 2-2 at 16, 48-52.) While Walker believed his first motion for a new trial filed by Eastman was "unbeatable," he felt Bunitsky's motion, which did not raise the exact claims previously advanced, constitute a "bait-and-switch." *Id.* Walker's motion for a new trial was denied and a sentencing date was set.

Walker then filed grievances against Bunitsky with the ODC. (Doc. 15-1 at 28-29); (Doc 2-2 at 16, 29-34.)[6] At a district court hearing on July 20, 2017, upon

---

the transcript to the motion for a new trial. See e.g., (Doc. 2-2 at 35-36); see also, (Doc. 2-2 at 43-44)(Walker's letter to Bunitsky explaining misconduct he perceives.)

[5] At the time of her withdrawal, Eastman still had not received the trial transcripts. (Doc. 15-1 at 46.)

[6] It appears no further investigation was performed by the ODC regarding the allegations against Bunitsky because Walker was seeking substitute counsel; he

5

request from Walker, Bunitsky was excused from representation and Walker was allowed to proceed pro se. (Doc. 15-1 at 47.) The district court proceeded to sentencing. During sentencing, the court observed that while Walker "vehemently disagreed" with the jury's verdict:

> he will finally have his right to pursue his appeal. He has every right to do that; that he can appeal the jury's verdict in this matter. If it is unsuccessful, he has separate remedies available to him where he can argue that he received ineffective assistance of counsel. But the only way this case moves forward today is if the Court pronounces its sentence so that it starts the appeal time running so that there is progress to closure in this matter given that Mr. Walker was arrested immediately after the offense on November 5th, 2015 and he's been in jail for 624 days.

(Doc. 13-5 at 4.)[7]

As set forth above, Walker did not file a direct appeal or seek any form of collateral review in the state court system. On February 14, 2018, Walker sent a letter to the Ninth Circuit seeking assistance and advising of his intention to file an

---

was directed by the ODC to contact the Office of the Public Defender. (Doc. 15-1 at 23). Walker advised he would not pursue further disciplinary action, but instead elected to represent himself pro se. *Id.* at 28.

[7] In her response to Walker's ODC complaint, DeWolfe also reiterated Walker's ability to appeal the jury's verdict. DeWolfe indicated her belief that she had sufficiently preserved various trial issues and hoped Walker succeeded on appeal. See, (Doc. 2-2 at 2-3.) Likewise, in the response to Walker's motion for a new trial, Gregory noted that several of the claims Walker attempted to advance were appropriate for consideration in state postconviction proceedings. See, (Doc. 13-38 at 6.)

6

application for federal habeas corpus relief. See, (Doc. 10-1.) Walker filed the instant petition in this Court on March 28, 2018.[8] (Doc. 1 at 10.)

## II. Walker's Claims

Walker essentially asserts that all parties in Gallatin County, including the investigating officers, district court judge, prosecution, and multiple defense attorneys, conspired to "criminally manufacture" charges surrounding Walker's purported assault of Glawe and then continued the collusion to obtain Walker's conviction. *See e.g.*, (Doc. 8-1 at 10-16.) Walker argues the Gregory criminally altered evidence contained within the trial record and that Bunitsky refused to turn over the "attorney working file." Taken together, Walker believes these acts have prevented him from presenting his claims to the Montana Supreme Court. Walker asserts his constitutional rights to Equal Protection and Due Process have been violated. (Doc. 8 at 3-4, ¶ 15(A) & (B); *see also*, (Doc. 8-1 at 1-9.) Additionally, Walker claims he was denied effective assistance of counsel, *id.* at 5, ¶ 15(C); (Doc. 8-1 at 3-4), and was denied his right to perfect an appeal. *Id.* at 6, ¶ 15(D); (Doc. 8-1 at 4-9.)

Walker asks this Court to: order his immediate release; order a forensic investigation into the workings of the Eighteenth Judicial District Court; order the

---

[8] *Houston v. Lack*, 487 U.S. 266, 270 (1988) (petition deemed filed on date delivered to prison authorities for mailing under the prison mailbox rule).

seizure of the trial audio, camera footage, and trial transcripts and verify that they do not "synchronize" with one another; appoint counsel; and, conduct an evidentiary hearing. *Id.* at 7, ¶ 18.

### III. Analysis

As set forth above, Walker acknowledges that he has not presented any of his claims to the Montana Supreme Court. Because it appeared Walker's claims were procedurally defaulted, he was directed to show cause as to why his petition should not be dismissed and directed to the ways in which he might make such a showing. See, (Doc. 9.)

In his response, Walker believes his default should be excused because:

(1) Not only was the jury biased, he is factually innocent and evidence presented at trial- including testimony from the responding EMT, Dr. Coil, and Belgrade City Court Clerk Flannagan- demonstrated his actual innocence (Doc. 10 at 1-2; 8-9);

(2) He was unable to pursue further action due to: serious health issues, being denied his criminal file, being on 23-hour lockdown at the Montana State Prison, and being assaulted by a cell mate; *id.* at 3-4, 5; and,

(3) The prosecution altered the underlying court record and the defense attorneys and the trial court judge conspired in this misconduct. *Id.* at 7.

**A. Procedural Default**

Generally, a state prisoner must exhaust all available state law remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). Exhaustion

8

requires the petitioner to fairly present his federal claims to the appropriate state courts at all appellate stages afforded under state law. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999). If the petitioner's federal claim is not exhausted, and he can no longer do so because of a state procedural bar, his claim is procedurally defaulted. *Cooper v. Neven*, 641 F. 3d 322, 327-8 (9th Cir. 2011); see also, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Nonetheless, a procedural default may be excused if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In the habeas corpus context, a fundamental miscarriage of justice occurs when a "constitutional violation has probably resulted in the conviction of one who is actually innocent. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Walker does not dispute that all of his claims in his petition are unexhausted and procedurally defaulted.

As explained below, because Walker has failed to establish cause and prejudice to excuse the default or that a fundamental miscarriage of justice will occur if this Court does not hear his claims, his petition should be dismissed.

### i. Cause and Prejudice

The procedural default doctrine and its attendant "cause and prejudice"

9

standard are "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730, and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack. *Murray*, 477 U.S. at 490-92. "A habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732. A petitioner is therefore required to demonstrate cause for his state court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of the claim. *Id.* at 750; see also, *Edwards v. Carpenter*, 529 U.S. 466, 451 (2000).

In order to establish cause for a procedural default, "a petitioner must demonstrate that the default is due to an external objective factor that cannot fairly be attributed to him. *Smith v. Baldwin*, 510 F.3d 1127, 1146 (9th Cir. 2007) (en banc). A habeas petitioner demonstrates prejudice by establishing that the constitutional errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). Prejudice need not be addressed if a petitioner fails to show cause. *Thomas v. Lewis*, 945 F. 2d 1119, 1123 n. 10 (9th Cir. 1991). As explained below, because Walker cannot establish adequate cause, there is no need to address prejudice and no corresponding basis to excuse his default.

Walker first states that he was diagnosed with kidney disease in 2002 and

has had ongoing health issues since his incarceration began in 2015. See, (Doc. 15-9.) But Walker fails to explain how this disease kept him from presenting his claims. As set forth above, Walker was not only able to file documents with the Ninth Circuit and this Court, he also filed an October 11, 2017 document with the state district court and sent a letter to Bunitsky on November 27, 2017. See, (Docs. 13-33; 13-32).

In this same vein, Walker seems to indicate that his initial transfer to the Martz Diagnostic Intake Unit (MDIU) at the Montana State Prison in the week following his sentencing hearing, constituted cause because he was held there for 120 days on "23-hour lockdown" without access to a computer all the while experiencing health complications. See, (Doc. 15 at 6.) Assuming Walker's timeline is correct, this would mean that he was at the MDIU until approximately November 24, 2017. While at MDIU, on September 20, 2017, Walker was assaulted by another inmate. See, (Doc. 15-8.) But, as set forth above, Walker was able to contact both the Gallatin County Clerk of Court and Bunitsky during his stay at MDIU and following the September assault. Thus, Walker has not shown that an objective external factor impeded his efforts to raise these claims in the state courts. See, *McClesky v. Zant*, 499 U.S. 467, 493 (1991).

Walker next contends that being denied his criminal file prevented him from presenting his claims to the state courts. This argument is likewise unconvincing

11

as demonstrated by the filings that Walker did make in the state district court. Following trial, Walker presented the district court with a brief outlining his argument that there was insufficient evidence to support the jury's verdict. *See e.g.*, (Doc. 13-18)("Template Legal Brief" filed 9/8/16). Walker then began developing his theory that Gregory had engaged in misconduct with which DeWolfe conspired. *See*, (Doc. 13-20)(11/9/16 Ltr. To Judge Brown).

In a subsequent letter to the court, Walker expressed his belief that Gregory had allegedly tampered with and altered the trial transcript which Walker then asserted made the transcripts themselves "void." *See*, (Doc. 13-22)(filed 11/23/16). Walker claimed to have 17 witnesses to support this tampering theory, aimed primarily at Glawe's testimony and DeWolfe's failure to adequately impeach Glawe. Walker sought a full "forensic examination" of the record. *Id.* at 2-3. Walker requested an evidentiary hearing to determine whether or not Court Reporter Sandra Murphy conspired with Gregory to alter the trial transcript. *Id.* at 3. In subsequent letters to the Court, Walker alleged Bunitsky was likewise complicit with Gregory and DeWolfe in this conspiracy. *See*, (Doc. 13-26); *see also*, (Doc. 13-29); (Doc. 13-31).

Walker was well aware of both the factual and legal basis of his claims- the same claims he seeks to advance before this Court are those which he presented to the state district court. There was no official interference that prevented him from

raising these claims before the Montana Supreme Court on direct appeal or to the district court in postconviction. In fact he was encouraged to seek both direct and collateral review by the district court, Gregory, and DeWolfe. See, f.n. 7, *supra*. Rather, Walker simply chose not to do so, based upon his belief that the state court system was unfair and that "the blatant judicial corruption and felony criminal acts committed by the State of Montana through its criminally corrupt agents" excused him from proper exhaustion. See e.g., (Doc. 1 at 9.)

"Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule," the Supreme Court has held that "a showing that the factual or legal basis for a claim was not reasonably available [to petitioner], or that some interference by officials made compliance impracticable, would constitute cause under this standard." *Murray*, 477 U.S. at 488 (internal quotation and citations omitted). But Walker has failed to establish either that the claims were unknown to him or that outside interference made it impossible to present his constitutional claims to the state courts. He elected not to do so. The fact that a Walker pursued other avenues of relief in lieu of presenting his available claims to the proper state court entities does not establish cause. See e.g., *Martinez Villareal v. Lewis*, 80 F. 3d 1301, 1306 (9th Cir. 1996). Because Walker has not demonstrated the requisite cause, his claims are procedurally defaulted without excuse.

ii. **Actual Innocence/Miscarriage of Justice Exception**

The Court can consider a defaulted claim in an extraordinary circumstance where an error resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Wood v. Hall*, 130 F. 3d 373, 379 (9th Cir. 1997). Under the gateway articulated in *Schlup*, a petitioner must produce sufficient proof of his actual innocence to bring him "within the narrow class of cases...implicating a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995). A petitioner must support his claim of actual innocence "with new reliable evidence- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence- that was not presented at trial." *Id.* at 324. A petitioner must "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

The Supreme Court noted, "tenable actual-innocence pleas are rare: 'A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)(quoting *Schlup*, 513 U.S. at 324). The Court's purpose is not to determine whether the petitioner is innocent, "but rather to assess the likely

impact of the evidence on reasonable jurors.'" *Stewart v. Cate*, 757 F. 3d 929, 938 (9th Cir. 2014)(quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). This standard is extremely high and "should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316). Thus, "in virtually every case, the allegation of actual innocence has been summarily rejected." *Schlup*, 313 U.S. at 324.

Walker has not shown that he is actually innocent of the crime of Aggravated Assault. As a preliminary matter, Walker has not presented this Court with any newly discovered and/or reliable evidence. Walker maintains his belief that Flanagan's testimony in the trial transcript was altered. (Doc. 10-4.) The Court would note that Walker attempted to contact Flanagan and procure a statement from her that would support his belief regarding transcript alterations. See, (Doc. 10-3.) No statement or affidavit from Flanagan has been provided.

Walker also submits his conclusory statement that Dr. Coil's trial testimony was altered in the transcript. Specifically Walker believes Dr. Coil's statement that Glawe's injury "was all in her head" was deleted. See, (Doc. 10-5). Walker also attempted to obtain a statement from Dr. Coil to support his alteration theory. (Doc. 10-6.) No statement or affidavit from Dr. Coil has been presented.

But none of the evidence of the purported transcript alteration is newly discovered. As set forth above, Walker was advancing these same claims to the district court prior to sentencing. See e.g., (Doc. 15-1 at 13)(12/2/16/ letter to Judge Brown advancing the transcript alteration claim); *Id.* at 11-12 (failure to raise alteration claim part of Walker's basis for firing Bunitsky); *Id.* at 14-15 (11/23/16 letter to Judge Brown requesting a hearing to determine whether Gregory gained access to the official transcript with the help of Ms. Murphy). Not only is this evidence not newly discovered, Walker has not demonstrated its reliability. The purported transcript alterations are based upon nothing more than Walker's speculation and conclusory beliefs. Moreover, the jury heard the unaltered live testimony presented during trial and still found Walker guilty. Even assuming *arguendo*, that there was some alteration to the official transcript, it is difficult to ascertain how this fact would support Walker's claim of actual innocence. In short, the proffered evidence falls short of the demanding *Schlup* standard. See, 513 U.S. at 324.

In addition, Walker seems to argue that the evidence presented at trial, including: Flanagan's testimony surrounding purported time discrepancies, EMT Robertson's testimony regarding lack of observable physical injury to Glawe, and Dr. Coil's conversion disorder testimony, supports his actual innocence claim. See, (Doc. 10 at 8-10); see also, (Docs. 10-2 & 10-7). But such evidence is

16

inadequate. To demonstrate actual innocence under *Schlup*, a petitioner must "show actual, factual innocence, not just legal insufficiency of the evidence." *United States v. Ratigan*, 351 F. 3d 957, 965 (9th Cir. 2003); *Bousley,* 523 U.S. at 623-24.

Walker has failed to make the requisite showing. While Walker argues the evidence presented at trial was insufficient to convict him and that the purported alterations in the trial transcript compounded the issue, the jury heard the unaltered testimony and found Walker guilty. Moreover, while Walker takes issue with all facets of the trial court proceedings, he has not provided the Court with any newly discovered evidence of his actual innocence. There has been no discernible miscarriage of justice and Walker cannot excuse the default under *Schlup* and its progeny.

### B. Conclusion

Because Walker has failed to demonstrate cause and prejudice to excuse his default or actual innocence to allow him to pass through the *Schlup* gateway, his petition is procedurally defaulted without excuse and should be dismissed.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes

a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because Walker has not established an adequate basis to set aside the procedural default of his claims. There are no close questions and there is no basis to encourage further proceedings at this time.

Based upon the foregoing, the Court enters the following:

### RECOMMENDATION

1. Mr. Walker's Amended Petition (Doc. 8) should be DISMISSED WITH PREJUDICE as procedurally defaulted without excuse.

2. The Clerk of Court should be directed to enter a judgment in favor or Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Walker may object to this Findings and Recommendation within 14

days.[9] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Walker must immediately notify the Court of any change in his mailing address.</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 12th day of November, 2019.

                                                      _/s/ Kathleen L. DeSoto_
                                                    Kathleen L. DeSoto
                                                    United States Magistrate Judge

---

[9] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Walker is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.